## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 26 2020, 9:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Abshire
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sevion Youngblood,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 26, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2140<br><br>Appeal from the Marion Superior Court<br><br>The Honorable David Certo, Judge<br><br>Trial Court Cause No.<br>49G12-1904-CM-13654 |

**Tavitas, Judge.**

## Case Summary

[1] Sevion Youngblood appeals his convictions for two counts of public intoxication, Class B misdemeanors. We affirm in part, reverse in part, and remand.

## Issues

[2] Youngblood raises two issues for our review, which we restate as:

     I.     Whether the evidence is sufficient to support Youngblood's convictions.

     II.    Whether Youngblood's convictions violate the prohibition against double jeopardy.

## Facts

[3] James Bahn, who worked at a church on East 30th Street in Indianapolis, called law enforcement after witnessing a vehicle drive into the church parking lot and over a concrete parking block toward a drainage ditch. Bahn remained inside the church until law enforcement arrived.

[4] Officer Brian Mack, with the Indianapolis Metropolitan Police Department, arrived at the church a short time later. Officer Mack observed a blue four-door Mercury sedan "sitting [with the vehicle's] frame" across a concrete parking block "half into a drainage ditch and half on the parking lot." Tr. Vol. II pp. 14-15. Officer Mack approached the vehicle and discovered Youngblood, who was asleep and unresponsive. No keys were in the vehicle's ignition. After waking Youngblood, Officer Mack observed that Youngblood's eyes were red

and bloodshot, Youngblood's speech was slurred, Youngblood had to steady himself on the vehicle to prevent from falling over, and Youngblood fumbled to get his identification out of his wallet. Officer Mack did not smell alcohol and determined Youngblood was not suffering from a medical condition. Youngblood told Officer Mack he took Percocet. Officer Mack concluded Youngblood was "intoxicated on narcotics." *Id.* at 17.

[5] On April 9, 2019, Youngblood was charged with Count I, public intoxication, a Class B misdemeanor, pursuant to Indiana Code Section 7.1-5-1-3(a)(1) and Count II, public intoxication, a Class B misdemeanor, pursuant to Indiana Code Section 7.1-5-1-3(a)(4). Count I was based on the allegation that Youngblood endangered himself, and Count II was based on the allegation that Youngblood harassed, annoyed, or alarmed Bahn.

[6] On August 14, 2019, the trial court held a bench trial. Witnesses testified to the foregoing facts. Officer Mack also testified that the drainage ditch where Youngblood's car was found was shallow, "but from the concrete to the depth of the drainage ditch is probably about [fifteen] feet." *Id.* at 15.

[7] Bahn testified[1] that: (1) he witnessed the car drive over a concrete parking block toward the creek; (2) the church is in a dangerous area and once had an individual come inside the church with a gun; and (3) Bahn was worried

---

[1] The deputy prosecutor told the trial court that Bahn is "a little bit hard of hearing" and that "English isn't [Bahn's] first language." Tr. Vol. II pp. 4-5.

because the vehicle stopped in such a way that the driver could no longer drive the vehicle. Bahn testified that he was "not sure 100 percent" if the driver was Youngblood. *Id.* at 11.

[8] At the conclusion of the bench trial, the trial court found Youngblood guilty of both counts. The trial court sentenced Youngblood to an aggregate one hundred eighty days in the Marion County Jail and one hundred seventy-six days suspended to probation. Youngblood now appeals his conviction.

## Analysis

### I. Sufficiency of the Evidence

[9] Youngblood argues the evidence is insufficient to convict him of both public intoxication offenses. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*). Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73

N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[10] Indiana Code Section 7.1-5-1-3 states in relevant part:

> (a) Subject to section 6.5 of this chapter, it is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance (as defined in IC 35-48-1-9), if the person:
>
>> (1) endangers the person's life;
>>
>> (2) endangers the life of another person;
>>
>> (3) breaches the peace or is in imminent danger of breaching the peace; or
>>
>> (4) harasses, annoys, or alarms another person.

"Controlled substance" is defined by Indiana Code Section 35-48-1-9 as a "drug, substance, or immediate precursor in schedule I, II, III, IV or V."

[11] Youngblood was charged, pursuant to subsection (a)(1) for endangering his own life in Count I, and pursuant to subsection (a)(4) for harassing, annoying, or alarming Bahn in Count II. Youngblood challenges, in part, whether the

evidence was sufficient to support the elements of intoxication and self-endangerment.[2]

### *A. Intoxication*

[12] Youngblood first argues that the evidence was insufficient to support a finding of intoxication. "Intoxicated" is defined in Indiana Code Section 9-13-2-86 as "under the influence of" alcohol or a controlled substance "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." "'Impairment can be established by evidence of: (1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech.'" *Naas v. State*, 993 N.E.2d 1151, 1153 (Ind. Ct. App. 2013) (quoting *Vanderlinden v. State*, 918 N.E.2d 642, 644 (Ind. Ct. App. 2009), *trans. denied*).

[13] Youngblood argues that there was no toxicology screen and that intoxication evidence was only presented through Officer Mack's testimony. Moreover, Youngblood argues: (1) there is no evidence of when or how much Percocet Youngblood ingested, and (2) the trial court did not take judicial notice that Percocet was a controlled substance covered by the intoxication statute.

---

[2] Youngblood discusses, but does not challenge, the trial court's conclusion that the church parking lot is a public place. To the extent Youngblood disagrees with the trial court's conclusion, this argument is waived. *See* Ind. Appellate Rule 46(A)(8).

Here, Officer Mack testified that Youngblood had red and bloodshot eyes, Youngblood had to balance himself on the vehicle, Youngblood fumbled with his wallet, and Youngblood's speech was slurred. Youngblood drove his vehicle over a concrete parking block, causing the vehicle to get stuck. Youngblood told Officer Mack that he took Percocet, which, in Officer Mack's experience, can produce these symptoms. The fact the evidence could have been presented differently does not render the evidence insufficient. Youngblood's argument is a request that we reweigh the evidence, which we cannot do. *See Gibson,* 51 N.E.3d at 210. The State presented sufficient evidence to support a finding of intoxication.

### B. Self-Endangerment

Youngblood also argues the evidence was insufficient to support a finding of self-endangerment. Our Court has continually interpreted the intoxication statute as allowing endangerment to apply to past or present conduct, not future conduct. Specifically, when analyzing cases of this Court, the panel in *Davis v. State,* 13 N.E.3d 500, 503 (Ind. Ct. App. 2014), found:

> The common thread in these cases is *past or present* conduct by the defendant did or did not place life in danger. While the statute does not require that actual harm or injury occur, some action by the defendant constituting endangerment of the life of the defendant or another person must be shown. This is true even where an officer testifies that the defendant was a danger to himself or others. . . . Were it otherwise, citizens could be convicted for possible, future conduct.

(emphasis added citations omitted).

[16] In making this argument, Youngblood argues: (1) Bahn did not describe the accident in detail; (2) when Officer Mack found Youngblood, he was asleep in the vehicle and not in danger; and (3) the evidence regarding the positioning of the car was unclear to demonstrate whether Youngblood had endangered himself. Youngblood's argument, however, is unavailing.

[17] Prior to being found asleep in his vehicle, which was stuck on its frame across a concrete block, Bahn witnessed Youngblood run over the concrete block and drive toward a ditch. It is reasonable for the trial court, as the fact finder, to conclude that Youngblood endangered his own life in doing so. Youngblood's argument that the evidence was not specific enough is a request for us to reweigh evidence, which we cannot do. Accordingly, the evidence was sufficient to convict Youngblood of Count I, public intoxication causing self-endangerment.[3]

## II. Double Jeopardy

[18] Youngblood argues that his convictions violate the prohibition against double jeopardy. The State agrees that "both convictions were based on the same act by Youngblood," and "the State does not oppose [Youngblood's] request" for our Court to vacate one of Youngblood's convictions. Appellee's Br. p. 14. Accordingly, we reverse and remand for the trial court to vacate Count II.

---

[3] Youngblood also challenges the sufficiency of the evidence regarding Count II; however, given our resolution of Youngblood's double jeopardy argument, we need not address the sufficiency of the evidence to support the conviction under Count II.

## Conclusion

[19] The evidence is sufficient to support Youngblood's conviction for public intoxication causing self-endangerment in Count I. We reverse, however, with instructions for the trial court to vacate Youngblood's conviction for public intoxication in Count II on double jeopardy grounds. We affirm in part, reverse in part, and remand.

[20] Affirmed in part, reversed in part, and remanded.

Najam, J., and Vaidik, J., concur.