## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2017, 8:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

J. Clayton Miller
Jordan Law, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth Ramsey,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 31, 2017

Court of Appeals Case No.
89A04-1702-CR-385

Appeal from the Wayne Superior Court

The Honorable Darrin M. Dolehanty, Judge

Trial Court Cause No.
89D03-1602-F5-13

**Kirsch, Judge.**

[1] Following a jury trial, Kenneth Ramsey ("Ramsey") was convicted of Level 5 felony operating a motor vehicle after forfeiture of license for life,[1] Class A misdemeanor operating a vehicle while intoxicated in a manner that endangers a person,[2] and Class C misdemeanor operating a vehicle with an alcohol concentration equivalent of 0.08 or more.[3] The trial court vacated the Class C misdemeanor conviction and entered judgment on the other two convictions. Ramsey now appeals and raises the following restated issue: whether the State presented sufficient evidence from which the jury could have concluded that he was the driver of the pickup truck in question.

[2] We affirm.

## Facts and Procedural History

[3] On the morning of February 9, 2016, two Wayne County Sheriff's Department deputies responded to a dispatch concerning a single vehicle accident on Interstate 70 ("I-70") westbound near mile marker 149. Deputy Jason Caves ("Deputy Caves") arrived at the scene first, and he observed a pickup truck ("the truck") in the median with its passenger side wedged against the highway cable barrier in such a manner that the passenger door could not be opened. The truck was not running, although the radio appeared to be on. There were

---

[1] *See* Ind. Code § 9-30-10-17.

[2] *See* Ind. Code § 9-30-5-2(b).

[3] *See* Ind. Code § 9-30-5-1(a)(1).

no occupants in the vehicle, and the driver's side door was locked. Deputy Seth Biava ("Deputy Biava") also arrived at the scene, but left in search of anyone who might be associated with the situation, while Deputy Caves remained with the truck. About one-half of a mile away, Deputy Biava observed a man, later determined to be Ramsey, walking along the side of I-70.

[4] Deputy Biava parked and exited his police vehicle and made contact with Ramsey, asking Ramsey if he had been in the accident. Ramsey told Deputy Biava that he had been in the accident and that he was walking toward a gas station for help. *Tr. Vol. II* at 131. Ramsey explained to Deputy Biava that he had been traveling westbound towards Indianapolis when he hit a slick spot, lost control, and ended up against the cable barriers in the median. *Id* at 131-32.

[5] Back at the scene, Ramsey told Deputy Caves that he was driving westbound when he hit an icy spot on the bridge and "spun out" and slid off the roadway. *Id*. at 155-56, 164-65. He also told the deputies that the keys were inside the locked truck. *Id*. 134-35, 147. While trying to gain access to the locked truck, Deputy Biava observed an open container of beer inside of the vehicle. *Id*. at 135, 158. As Deputy Caves was speaking to Ramsey, he detected an odor of alcohol, and Ramsey was transported to a hospital for a blood draw. Driving records obtained by the deputies revealed that Ramsey's driver's license had been suspended for life.

[6] On February 12, 2016, the State charged Ramsey with: Count I, Level 5 felony operating a motor vehicle after forfeiture of license for life; Count II, Class A misdemeanor operating a motor vehicle while intoxicated in a manner that endangers a person; and Count III, Class A misdemeanor operating a motor vehicle with an alcohol concentration equivalent of at least .08 to .15 gram of alcohol per 100 milliliters of blood. *Appellant's App. Vol. II* at 11-13.

[7] Prior to the jury trial, the parties stipulated to the following facts: (1) Ramsey's driving privileges were forfeited for his lifetime in September 2011; (2) the truck involved in the accident was registered to Ramsey; and (3) the toxicology report from Ramsey's blood draw showed an alcohol concentration equivalent of .149 gram of alcohol per 100 milliliters of blood. *Id*. at 40; *Tr. Vol. II* at 126-27. The sole factual issue to be determined at trial was "whether or not [Ramsey] was driving the truck at the time of the accident." *Tr. Vol. II*. at 36.

[8] During trial, Deputy Biava testified that when he saw Ramsey walking along the shoulder of I-70, he stopped and talked to Ramsey and that Ramsey told him that he was driving to work when his vehicle slid on some ice, he lost control, and the vehicle went into the median. Deputy Biava stated that he drove Ramsey back to the accident scene, and when the deputies asked where the keys to the truck were, Ramsey told them that the keys were inside the vehicle and that it was locked. As Deputy Biava was using tools to open the vehicle, in order to both get the keys for Ramsey and obtain the registration and insurance information for the crash investigation, Deputy Biava saw an open container of beer in the console.

[9] Deputy Caves also testified at trial. He stated that, once Ramsey was returned to the scene, he asked Ramsey about the crash, and Ramsey stated that he was driving westbound, hit an icy spot on the bridge, spun out, and came to rest against the cables. Deputy Caves testified that he smelled alcohol on Ramsey's breath as he was speaking to Ramsey at the accident site.

[10] Ramsey testified that he was not driving the truck at the time that the accident occurred. He stated that another man, named David Kincaid ("Kincaid"), was driving the truck at the time and was taking Ramsey to work. Ramsey testified that he had hit his head in the accident, became disoriented, and when he "got [his] bearings" and looked for Kincaid, he was gone. *Tr. Vol. II*. at 169. Ramsey had "no clue" where Kincaid went. *Id*. Ramsey testified that he did not recall telling the deputies that he had been driving the truck. Upon cross examination, Ramsey stated that he had just met Kincaid that same morning, when Kincaid came to Ramsey's house to drive him to work, and he did not have Kincaid's address.

[11] The jury found Ramsey guilty as charged. The trial court vacated Count III, entered judgment of conviction on Counts I and II, and sentenced Ramsey. He now appeals.

## Discussion and Decision

[12] Ramsey claims that the State failed to present sufficient evidence to convict him. Our standard of review is well settled:

> When reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. We may look only to the evidence most favorable to the judgment and reasonable inferences therefrom and will affirm if we conclude that evidence of probative value exists such that a reasonable fact finder could find the elements of the underlying crime proven beyond a reasonable doubt.

*Vanderlinden v. State*, 918 N.E.2d 642, 644 (Ind. Ct. App. 2009), *trans. denied*. As we have recognized, "A conviction may be based upon circumstantial evidence alone." *Crawley v. State*, 920 N.E.2d 808, 811 (Ind. Ct. App. 2010), *trans. denied*; *Staley v. State*, 895 N.E.2d 1245, 1250 (Ind. Ct. App. 2008), *trans. denied.*

[13] In this case, each charged offense required the State to prove that Ramsey was operating a motor vehicle. Ind. Code §§ 9-30-10-17, 9-30-5-2(b), 9-30-5-1(a)(1). To operate a vehicle is to drive it or be in actual control of it upon a highway.[4] *Jellison v. State*, 656 N.E.2d 532, 535 (Ind. Ct. App. 1995). Ramsey's claim on appeal is that the State presented insufficient evidence that he was the person who was operating the truck on the day in question. He argues that no one saw him driving the pickup truck, and, in fact, no one even saw him in the truck.

[14] Although Ramsey denied at trial that he was driving the truck and claimed that Kincaid was driving it, the deputies testified that Ramsey told them that he was

---

[4] "Public highway" means a street, an alley, a road, a highway, or a thoroughfare in Indiana, including a privately owned business parking lot and drive, that is used by the public or open to use by the public. Ind. Code § 9-25-2-4.

driving the truck when it slid off the interstate. The jury was not required to credit Ramsey's version of events. *See McCullough v. State,* 985 N.E.2d 1135, 1139 (Ind. Ct. App. 2013) (trier of fact is under no obligation to credit defendant's version of events), *trans. denied.* Ramsey's claim is "a classic request to reweigh the evidence and reassess [his] credibility, which we will not do." *Crawley,* 920 N.E.2d at 813. The State presented sufficient evidence from which the jury could have inferred that Ramsey was operating the truck when it slid off I-70 and came to rest in the median.

[15] Affirmed.

[16] Mathias, J., and Altice, J., concur.